**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|   |   |   |
|---|---|---|
| In re: | ) ) ) | Chapter 7<br>Case No. 12-41465 -MSH |
| BRIAN J. O'SULLIVAN AND ANDREA D. O'SULLIVAN | ) ) ) |   |
| Debtors | ) |   |

**MEMORANDUM OF DECISION AND ORDER ON MOTION OF MANITOU AMERICAS, INC. TO REOPEN THE CHAPTER 7 CASE AND DECLARE DEBT NONDISCHARGEABLE**

Manitou Americas, Inc., formerly known as Gehl Company, (hereinafter "Gehl") has moved to reopen this chapter 7 case in order to seek to except from Brian O'Sullivan's discharge a debt owed to Gehl. The debtors oppose. At issue is whether Gehl had knowledge of the debtors' bankruptcy filing so as to be bound by the previously established deadline for commencing non-dischargeability actions.

The facts are not in dispute. Mustang Manufacturing Company, Inc. entered into dealership agreements with Kennedy Exporters, LLC. Brian O'Sullivan, one of the debtors, was a manager of Kennedy Exporters. As a result of a merger or acquisition Gehl Company succeeded to the interests of Mustang in the dealership agreements.[1] On April 28, 2011, Gehl sued Mr. O'Sullivan and others in the Middlesex County Massachusetts Superior Court for fraud and conversion in connection with the dealership relationship. On December 9, 2011, a judgment by default entered in favor of Gehl and against Mr. O'Sullivan in the amount of $334,432.89, plus interest and

---

[1] The debtors maintain that Mustang is a subsidiary of Gehl while Gehl's counsel has stated that Gehl acquired Mustang and "absorbed" it. Which party is technically correct has no bearing on the outcome of this matter.

1

attorneys' fees. On February 29, 2012, the superior court issued an execution and on March 3, 2012, a sheriff levied the execution upon Mr. O'Sullivan's real estate located in Middlesex County, Massachusetts.

On April 18, 2012, Mr. O'Sullivan and his wife filed a voluntary petition under chapter 7 of the United States Bankruptcy Code (11 U.S..C § 101 *et seq.*). The debtors did not list Gehl or its successor Manitou in their bankruptcy papers but did list "Mustang Mfg. Co., Inc." as a creditor. Schedule F (creditors holding unsecured non-priority claims) of the schedule of assets and liabilities accompanying the debtors' bankruptcy petition as well as the creditor mailing matrix filed by the debtors listed Mustang's address as PO Box 179, One Gehl Way, West Bend, Wisconsin 53021. The street address is correct but the zip code is wrong. However, when the Bankruptcy Noticing Center ("BNC"), the court's noticing agent, mailed the court's Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines, which is the formal court-generated notice to all creditors that a bankruptcy case has been commenced and that certain deadlines have been established, BNC saw the zip code error and corrected it. This is evidenced by BNC's certificate of service filed with the court indicating that the zip code used by BNC for noticing Mustang was 53095-3463. Among other things, the court's notice informed creditors that the deadline to object to the debtors' discharge or to the dischargeability of any debt was July 16, 2012.

Gehl maintains that it did not receive notice of the debtors' bankruptcy and only learned of it on August 15, 2012, through its own investigation, by which time the debtors had received their discharges and the case was closed. Gehl points to the debtors' listing Mustang as its creditor when Mr. O'Sullivan knew full well as a result of the judgment against him that Gehl had succeeded to

2

the rights of Mustang. Gehl also notes that the address used by the debtors for Mustang had the wrong zip code.

Bankruptcy Code § 342(a) requires that "[t]here shall be given such notice as is appropriate ... of an order for relief in a case under this title." Section 342(a) does not direct how the notice is to be given, only that it be "appropriate." *In re O'Shaughnessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) (internal citation omitted). Fed. R. Bankr. P. 2002(a)(1) directs that this notice be by mail as follows:

> (a) …Except as provided in subdivisions (h), (i), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:
>
> (1) the meeting of creditors under § 341 or § 1104(b) of the Code, which notice, unless the court orders otherwise, shall include the debtor's employer identification number, social security number, and any other federal taxpayer identification number….

While notice is essential to protecting the due process rights of creditors it need not be perfect. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 (U.S. 1950).

Courts generally consider the totality of the circumstances in determining whether notice was reasonable. *Illinois ex rel. Hartigan v. Peters,* 871 F.2d 1336, 1340 (7th Cir. 1989). Thus, minor inaccuracies in notices to creditors do not mandate a finding that the notice is invalid. *In re Torres*, 15 B.R. 794, 796 (Bankr. E.D. N.Y. 1981).

3

"The burden of establishing that a creditor has received adequate notice rests with the debtor." *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999). The debtor is aided in this task by the presumption that mail properly addressed is received by the recipient.

> While there has long been recognized a presumption that properly mailed articles are received by the addressee,… the party wishing the benefit of this presumption must first prove proper mailing.... To do so, this party must show that: (1) the letter was addressed properly; (2) sufficient postage was affixed to the letter; and (3) the letter was properly deposited in the mails. ... Further, where letters are not returned to the sender, receipt or delivery is further presumed....

*In re Smith,* 42 B.R. 927, 931 (Bankr. D. Mass.1984) (internal citations and footnote omitted).

> "A denial of receipt is insufficient to rebut a presumption that proper notice was given, but it does raise a factual issue." *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 735 (5th Cir.1995); *see also In re Bucknum,* 951 F.2d 204, 207 (9th Cir.1991); *In re Longardner & Assocs., Inc.,* 855 F.2d 455, 459 (7th Cir.1988), *cert. denied,* 489 U.S. 1015 (1989); *In re Northeast Office & Commercial Properties, Inc.,* 178 B.R. 915, 918 n. 1 (Bankr.D.Mass.1995); *but see In re Yoder Co.,* 758 F.2d 1114, 1118 (6th Cir.1985)(holding that testimony of nonreceipt standing alone is sufficient to rebut the presumption of receipt).

*Davis v. Brown*, 1996 WL 331153, 1 (1st Cir. 1996) (unpublished).

Gehl's challenge rests on the assertion that the court's notice was not properly addressed. But the fact that the debtors' schedules and matrix contained an incorrect zip code for Mustang is irrelevant; BNC corrected the zip code when sending out the bankruptcy notice. The street address for Mustang is the same as the address of Gehl, its acknowledged successor. That the court's notice was addressed to Mustang and not to Gehl also is not an infirmity that would somehow invalidate notice. Gehl succeeded to Mustang's rights against Mr. O'Sullivan and the address where the notice was sent was Gehl's.

The affidavit of Robert Kubatzki, Gehl's credit and collateral manager, dated December 27, 2012, filed in support of Gehl's argument that it did not receive notice of the debtors' bankruptcy also falls short of establishing the kinds of facts that could rebut the presumption of

4

notice established in this case. The relevant assertions in Mr. Kubatzki's affidavit are contained in paragraphs 7, 8 and 9 as follows:

> 7. No person at Gehl ever received any notice of the bankruptcy that was designated by Debtors to be sent to Mustang.
>
> 8. All notices sent to Gehl, in relation to any past or present dealer of Mustang, Gehl or Manitou brand products, are forwarded to me pursuant to my duties as the credit and collateral manager for Gehl n/k/a/ Manitou Americas, Inc.
>
> 9. No employees of Gehl n/k/a/ Manitou Americas, Inc. ever received any notice of debtors' bankruptcy and accordingly no notice of such bankruptcy was ever provided to me.

The affidavit fails to establish a reasonable predicate upon which Mr. Kubatzki could possibly be in a position to state that "no person at Gehl" or "no employee of Gehl" ever received any notice of the debtors' bankruptcy. The only fact contained in the affidavit that may reasonably be credited is Mr. Kubatzki's statement that "no notice of such bankruptcy was ever provided to me." That fact is insufficient to rebut the presumption that the court's notice of the debtors' bankruptcy mailed to Mustang at Gehl's address in Wisconsin was received by Gehl.

Finding that notice was adequate in this case advances important foundational principles and policies of our bankruptcy system.

> The efficient administration of the bankruptcy estate depends on the imposition of deadlines. Both the debtor and the creditors benefit from the prompt resolution of the creditor's claims and determination of the debtor's proposed repayment terms.
>
> The purpose of the bankruptcy laws is quickly and effectively to settle bankrupt estates…. Under the Bankruptcy Code and [r]ules, creditors play a zero-sum game in which the failure to navigate effectively through various intricate procedures can mean total defeat. Moreover, because such procedures are thought to be necessary to protect the bankrupt and the creditors, exceptions cannot be made every time a creditor claims hardship…. Although as a general matter, complaints to bar discharge or to determine dischargeability may be filed any time before or after the conclusion of the bankruptcy case, complaints to bar discharge or to determine dischargeability under § 523(a)(2) (fraud or false financial

5

statement); § 523(a)(4) (fraud or defalcation acting as a fiduciary, embezzlement or larceny); or § 523(a)(6) (willful and malicious injury) are subject to a 60 day deadline for the filing of a complaint. Bankruptcy Rule 4007(c). As previously stated, the policy behind the Rule is to promote the prompt administration of the bankruptcy estate and to facilitate the debtor's "fresh start."

The result [of the 60 day deadline] is automatic and sometimes leads to harsh results. However, Congress intended to establish a system whereby certain types of nondischargeability claims would be automatically cut off after a relatively short period of limitations in order to prevent debtors from being harassed by creditors after their claims had been discharged in bankruptcy. Congress meant to cure the abuse whereby debtors were routinely sued by creditors long after bankruptcy creditors claiming that their claims were not discharged because of fraud or a false financial statement.

*In re Collins*, 173 B.R. 251, 252 -253 (Bankr. D.N.H.1994) (internal citations, quotation marks and footnote omitted).

[Remainder of page left blank.]

      I find that Gehl had notice of the O'Sullivans' bankruptcy in time for it to have commenced an adversary proceeding seeking to exclude its debt from Mr. O'Sullivan's discharge and so it is too late for it to do so now. Given that reopening this case will not enable Gehl to accomplish its goal of seeking to have its judgment claim held non-dischargeable, the motion to reopen is DENIED.

                                                  By the Court

Dated: March 21, 213

                                                  Melvin S. Hoffman
                                                  U.S. Bankruptcy Judge

Counsel appearing:

Patricia J. Stokes-Ramos, Esq.
Tyngsborough, MA
For the debtors, Brian and Andrea O'Sullivan

Gary M. Weiner, Esq.
Weiner & Lange, P.C.
Springfield, MA
For Manitou Americas, Inc., f/k/a/ Gehl Company

7